IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-HC-2056-F

| | | |
|---|---|---|
| MICHAEL LOUIS FRAZIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DONALD MOBLEY, | ) | |
| | ) | |
| Respondent. | ) | |

This matter arises from the petition for writ of habeas corpus [DE-1], pursuant to 28 U.S.C. § 2254, filed by Petitioner, a state prisoner proceeding pro se. Presently before the court are: 1) Respondent's motion for summary judgment [DE-11]; 2) Respondent's motion for expansion of the page limitation on supporting memorandum[1] [DE-13]; and 3) Petitioner's motion for discovery [DE-19]. For the following reasons: 1) Respondent's motion for summary judgment [DE-11] is ALLOWED; 2) Respondent's motion for expansion of the page limitation on supporting memorandum [DE-13] is ALLOWED; 3) Petitioner's motion for discovery is DENIED[2] [DE-19]; and 4) the instant petition is DISMISSED.

---

[1] In this motion, Respondent requests leave to exceed the 30 page limitation by three pages. See Local Civil Rule 7.2(e). For good cause shown, this request [DE-13] is ALLOWED.

[2] "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). "A judge may, for good cause, authorize a party to conduct discovery[.]" Rules Governing § 2254 Cases, Rule 6(a). Additionally, "[a] party requesting discovery must provide reasons for the request." Id., Rule 6(b). In this case, Petitioner has not established good cause for discovery, and, therefore, his motion for discovery [DE-19] is DENIED.

## STATEMENT OF THE CASE

On January 14, 2011, in the Superior Court of Nash County, Petitioner was convicted after a trial by jury of one count of first degree rape and four counts of taking indecent liberties with a child. Pet. [DE-1], p. 1. He was sentenced to a term of incarceration of 240 to 297 months for the first degree rape conviction and four consecutive terms of incarceration of 16 to 20 months for the indecent liberties convictions. Id. Petitioner filed a direct appeal with the assistance of counsel, and on January 17, 2012, the North Carolina Court of Appeals found no error in Petitioner's conviction or sentence. State v. Frazier, No. COA11-653, 2012 WL 123147 (N.C. Ct. App. Jan. 7, 2012). On March 16, 2012, the North Carolina Supreme Court denied Petitioner's pro se notice of appeal and petition for discretionary review. State v. Frazier, 722 S.E.2d 790 (N.C. 2012).

Petitioner subsequently filed a pro se Motion for Appropriate Relief ("MAR") in the Superior Court of Nash County on February 27, 2013. Resp't Ex. 4 [DE-12-6]. The MAR was denied on March 6, 2013. Pet'r. Ex. [DE-1-3], pp. 2-3. On June 14, 2013, Petitioner filed a certiorari petition in the North Carolina Court of Appeals, which was denied on July 2, 2013. Resp't. Ex. 7 [DE-12-10].

The instant petition was filed on March 20, 2014. Pet. [DE-1]. This court concluded that the petition survived initial review pursuant to Rule 4 of the Rules Governing § 2254 cases in the United States District Courts on November 6, 2014 [DE-7], and instructed the Clerk of Court to maintain management of the matter. Respondent filed the instant motion for summary judgment on December 1, 2014 [DE-11]. Petitioner filed the instant motion for discovery on January 12, 2015 [DE-19] and responded to the motion for summary judgment on January 16, 2015 [DE-21]. Accordingly, these matters are now ripe for adjudication.

2

## STATEMENT OF THE FACTS

The North Carolina Court of Appeals summarized the nature of this case and the pertinent facts as follows:

> On 16 November 2009, Michael Louis Frazier ("defendant") was indicted for one count of statutory rape and four counts of taking indecent liberties with a child. This conduct was alleged to have taken place with the daughters of defendant's girlfriend, M.B. and R.B. Prior to trial, defendant filed motions to suppress the following: (1) a telephone call made by defendant on his cell phone from the Nash County Sheriff's Department; (2) statements made by defendant to deputies of the Nash County Sheriff's Department; and (3) the fruits of the information obtained from the telephone call.
>
> In an order dated 11 January 2011, the trial court granted defendant's motion to suppress as to defendant's 3 July 2009 written statement; any references to the 3 July 2009 telephone call and defendant's instructions to destroy computer files; and statements made by M.B. and R.B. on 3–4 July 2009. The trial court denied defendant's motion to suppress his statements on 6, 9, and 16 July 2009.
>
> Defendant was convicted of one count of first-degree rape and four counts of taking indecent liberties with a child. A mistrial was declared on several other charges since the jury could not reach a unanimous verdict. Defendant was sentenced to consecutive terms of imprisonment of 240 to 297 months for the first-degree rape conviction and 16 to 20 months imprisonment for each indecent liberties conviction. At the conclusion of his incarceration, defendant was ordered to register as a sex offender for a period of 30 years. . . .
>
> . . .
>
> The trial court's unchallenged findings of fact establish the following. On 3 July 2009, defendant went to the sheriff's office to speak with deputies investigating this case. Defendant informed the deputies that he wished to speak with the investigating detectives. Defendant was placed in a conference room by himself. The conference room was equipped with audio and visual monitoring equipment. R.B. and M.B. were at the sheriff's office in a separate room. Detective McKnight observed defendant speaking on his cell phone. It appears defendant was unaware he was being observed by the police. Detective McKnight heard defendant say, "Tell Ryan to destroy the computer—get the stuff off the computer[;] use a sledge hammer if you have to." The defendant drafted a written statement while he was in the conference room, but the trial court's findings do not indicate whether he prepared this statement before or after speaking on his cell phone. Detective McKnight went to the

3

conference room to speak with defendant, but he had "passed out," apparently overcome by stress or a medical condition, before she could interview him. Defendant was transported to the local hospital and charged with several offenses. He was subsequently released from the hospital and incarcerated in the Nash County jail.

Three days later, on 6 July 2009, Detective McKnight received a communication from Amy Peterson of the Nash County Department of Social Services that defendant wished to speak with her. Defendant was interviewed in a conference room at the Nash County Jail. Detective McKnight advised defendant of his Miranda rights. Defendant acknowledged that he understood his rights, stated that he was waiving those rights, and agreed to speak with Detective McKnight. During this interview, defendant admitted that he had "sexual relations" and "intercourse" with R.B.

On 9 July 2009, Nash County jailers informed Detective McKnight that defendant wished to speak with her. Again, she advised him of his rights, which he waived. Defendant stated that he needed help with his "sexual addiction." On 16 July, defendant sent a note to Detective McKnight asking to speak with her. Once again, defendant waived his rights. In this interview, defendant admitted to "having sexual relations with [R.B. and M.B.]."

Frazier, 2012 WL 123147, at *1-3 (footnotes omitted).

## DISCUSSION

### A. Motion for summary judgment

#### 1. Standard of review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith

4

Radio Corp., 475 U.S. 574, 587 (1986).

Because Petitioner's claims were decided on the merits in the state court, the court's review is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

5

case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Likewise, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010); see also Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) ("For a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable.") (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)). Thus, while "deference [in the habeas context] does not imply abandonment or abdication of judicial review" and does not "preclude relief," Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), the deferential standard imposed by § 2254(d), as to both legal conclusions and factual determinations by the state courts, erects a substantial bar for state inmates seeking habeas relief in federal court.[3]

---

[3] To this end, the Supreme Court has noted:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no probability fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus relief from a federal court, a state
> (continued...)

The statute "does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000). If the state court did not articulate the rationale underlying its adjudication, a federal habeas court must examine the record and the clearly established Supreme Court precedent to determine whether the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. Id. at 158. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99. Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Fisher v. Lee, 215 F.3d 438, 445 (4th Cir. 2000).

2. **Analysis**

a. **Ground One**

Petitioner contends that "evidence used during trial to prejudice [him] . . . was the result of an illegal search" and should have been suppressed. Pet. [DE-1], p. 5. Specifically, Petitioner contends that the trial court should have suppressed the fruits of the information obtained from a telephone call Petitioner made on his cell phone from the Nash County Sheriff's Department. Id. This claim was denied on its merits by the North Carolina Court of Appeals as follows:

---

³(...continued)
    prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 102-03 (2011).

7

In his first argument, defendant contends that the trial court erred in not suppressing his statements of 6, 9, and 16 July 2009. We disagree. . . .

. . .

When police use fruit of a poisonous tree to secure a confession, that confession may be suppressed even when the technical requirements imposed by Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694 (1966), are met: "[T]he ultimate test of the admissibility of a confession still remains whether the statement made by the accused was in fact voluntarily and understandingly given." State v. Milo, 335 N.C. 353, 363, 440 S.E.2d 98, 102 (1994) (quoting State v. Rook, 304 N.C. 201, 216, 283 S.E.2d 732, 742 (1981)). This inquiry requires courts to consider all circumstances surrounding the incriminating statement. Id. (quoting Rook, 304 N.C. at 216, 283 S.E.2d at 742). A suspect's confession may be excluded as fruit of the poisonous tree when he confesses to a crime after being confronted with evidence of the crime that was obtained through an illegal search. See, e.g., State v. Sings, 35 N.C. App. 1, 5, 240 S.E.2d 471, 473–74 (1978) (considering whether this type of police conduct required suppression, but rejecting the defendant's argument where, among other things, he admitted that he would have confessed prior to being presented with the fruit of the illegal search); cf. 6 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 11.4(c), at 307 (4th ed. 2004) (explaining why confessions that are the fruit of illegal searches are unique from other poisonous tree scenarios and stating that "it is crystal clear that giving the defendant the Miranda warnings will not break the causal chain between an illegal search and a subsequent confession"). . . .

. . .

The trial court held that defendant's statements on 6, 9, and 16 July were freely and voluntarily given after defendant waived his Miranda rights. The State introduced those statements into evidence at trial. The court also suppressed "statements made by the minor children that evening of July 3rd or 4th after being referenced to, apprised of or prompted about the information [Detective] McKnight overheard or observed the defendant say about the computer." Defendant argues that police illegally used the contents of the phone call by interviewing the individual to whom defendant spoke, collecting additional evidence in the form of an audio cassette tape, and confronting defendant with that tape. He argues the tape was used to elicit his incriminating statements to the police on 6, 9, and 16 July 2009, making these statements involuntary. Therefore, he contends that the trial court erred when it did not suppress references to those statements at trial.

In an attempt to establish that the State did not meet its burden of proving that the three subsequent interviews were not the fruit of the suppressed phone call, defendant

8

attempts to link these episodes with events that are not contained in the trial court's findings of fact. Our review on appeal is limited to determining whether the evidence supports the findings of fact and whether those findings support the conclusions of law. Biber, 365 N.C. at 167–68, 712 S.E.2d at 878. Unchallenged findings of fact are binding on appeal. Id. at 168, 712 S.E.2d at 878. Defendant does not challenge any of the trial court's findings of fact. Nor does he assert that the trial court failed to make findings of fact that were supported by uncontroverted evidence which defendant asked the trial court to address in its order.

The trial court's unchallenged findings do not indicate that the suppressed evidence led to the discovery of an audio tape, which, in turn, was used to elicit defendant's confessions. In fact, there is no mention of the tape in the court's findings. Defendant has failed to establish that the trial court's findings of fact do not support its conclusions of law.

This argument is without merit.

Frazier, 2012 WL 123147, at *1-3 (footnotes omitted).

Generally, a prisoner may not collaterally attack a state conviction on the grounds that illegal evidence was admitted at trial where the state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 494 (1976); see also, Massey v. Ballard, No. 2:08-CV-936, 2009 WL 2916889, at *13 (S.D.W. Va. Sept. 8, 2009) ("[T]o the extent that Petitioner has contended that the tape recording of his telephone conversation with the alleged victim was an illegal search and seizure, that claim is not cognizable in federal habeas corpus because Petitioner already had an opportunity for full and fair litigation of that issue . . . ."), appeal dismissed, 363 F. App'x 243 (4th Cir. 2010). Here, Petitioner was provided a full and fair opportunity to raise and litigate his Fourth Amendment claim, and in fact raised it at a suppression hearing in the trial court and on direct appeal. Further, the state court's ruling was neither contrary to nor an unreasonable application of Supreme Court precedent, and was not based upon an unreasonable determination of the facts. Accordingly, Respondent is entitled to summary judgment

9

on this claim.

### b. Ground Two

Petitioner argues that his "confessions were illegally obtained and not made knowingly and willingly due to [his] mental health conditions." Pet. [DE-1], p. 7. This claim was raised by Petitioner in his MAR, and was summarily denied. Because the MAR court did not articulate the rationale underlying its adjudication, the undersigned must examine the record to determine whether the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. Bell, 236 F.3d at 158.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. Jackson v. Denno, 378 U.S. 368, 376 (1964). A defendant seeking to exclude a statement as involuntary must demonstrate that his "will was overborne in such a way as to render his confession the product of coercion." Arizona v. Fulminante, 499 U.S. 279, 288 (1991). In determining the issue of voluntariness, a court must consider "'the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation.'" Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). The surrounding circumstances include "not only the crucial element of police coercion," but also "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." Withrow v. Williams, 507 U.S. 680, 693 (1993) (internal citations omitted). Although federal review of the final issue of voluntariness is plenary, subsidiary factual findings of the state court are presumed correct pursuant to § 2254(d), and federal courts "should . . . give great weight to the considered conclusions of a coequal state judiciary," Miller v. Fenton, 474 U.S. 104, 112 (1985); Correll v. Thompson, 63

10

F.3d 1279, 1290 (4th Cir.1995), cert. denied sub nom. Correll v. Jabe, 516 U.S. 1035 (1996). The petitioner for § 2254 relief bears the burden of establishing by a preponderance of the evidence that his statement was involuntary. Degraffenreid v. McKellar, 1989 WL 90569, at * 2 (4th Cir. 1989), cert. denied, 494 U.S. 1071 (1990).

Here, the trial court presided over a suppression hearing, and the evidence presented at this hearing included, *inter alia*, a video recording of Petitioner's July 9, 2009 interrogation. Resp't. Ex. 9 [DE-12-12], p. 35. After the suppression hearing, the trial court made the following findings of fact and conclusions of law:

> 1. That on or about the July 3rd, 2009, the Defendant accompanied by his father, went to the Nash County Sheriffs Office to speak with officers investigating subject matter of this trial.
>
> 2. That Bethany McKnight, with the Nash County Deputy Sheriff, was the lead investigator, and was advised that the Defendant was in the Nash County Sheriff's Offices wishing to speak with the investigators.
>
> 3. That the minor children that are the subject of this trial . . . were also in the building, but they were being housed in a different location within the Nash County Sheriff's Office.
>
> 4. That the Defendant was placed in a conference room alone by himself separate and apart from the minor victims. This conference. room was equipped with audio. and visual monitoring equipment.
>
> 5. That Bethany McKnight while in another part of the Nash County Sheriff's Office observed the Defendant on a monitor using his cell telephone.
>
> 6. That she turned up the volume on the monitoring equipment to hear the Defendant's cell phone conversation where he stated, "Tell Ryan to destroy the computer-get the stuff off the computer, use a sledge hammer if you have to."
>
> 7. That after observing and listening to the Defendant on his cell phone Bethany McKnight went to the conference room to talk to the Defendant.
>
> 8. That the Defendant passed out before she was able to begin her initial interview

11

with him.

9. That the Defendant was transported to a local hospital for appropriate medical care and treatment.

10. That while in the local hospital, the Defendant was charged with various sex offense that he is now faced with today.

11. That prior to the Defendant passing out that the Defendant had written a voluntary statement in his own handwriting.

12. That the defendant was interviewed on July 6th, by Detective McKnight, Amy Peterson of the Nash County department of Social Services, and Misty Strickland of the Nash County Deputy Sheriff.

13. That the Defendant was placed in the conference room and the Nash County jailers advised Bethany McKnight that the Defendant wished to speak with her.

14. That Ms. McKnight, at the Defendant's request went to the Nash County Jail to interview the Defendant and prior to the beginning of the interview Bethany McKnight advised the Defendant of his Miranda Rights. She read each right to the Defendant. He acknowledged that he understood those rights, that he freely, and voluntarily and knowingly waived rights, and agreed to speak with her.

15. That this interview lasted approximately one hour and was not video taped or recorded.

16. The during the course of this July 6th interview, the Defendant admitted to Bethany McKnight that he loved [R.B.] and admitted that he had sexual relations with her.

17. That the Defendant also admitted to Bethany McKnight that he had watched [R.B.] have intercourse with her boyfriend and the defendant had intercourse with her after that.

18. That on July 9th Corporal Silver and Baker of the Nash County Jail informed Bethany McKnight that the Defendant, again, wanted to speak with her.

19. That prior to the interview on July 9th, Bethany McKnight again advised the Defendant of his Miranda Rights. The Defendant informed Bethany McKnight that he understood those rights after having them read to him [and] that he voluntarily and knowingly waived those rights.

12

20. That the interview of the July 9th, was conducted on the third floor of the Nash County Sheriff Department and was video taped.

21. That during the course of this interview on July 9th, the Defendant appeared to be in a sane and lucent state of mind and at no time made any complaints of any physical or mental problems he was encountering at that time.

22. That the Defendant stated during this interview that he had a problem and that he needed help with his sexual addiction.

23. That on July 16th, the Defendant gave another interview that was also video taped.

24. That the Defendant sent Bethany McKnight a handwritten not and requested that he be allowed to speak with her.

25. That prior to beginning this interview, Bethany McKnight again read the Miranda Rights to Defendant. He acknowledged that he understood those rights and that he knowingly, freely, and voluntarily waived those rights and agreed to speak with Bethany McKnight.

26. That at this time Bethany McKnight told the defendant that she knew he had a lawyer. He advised her that he wished to proceed without the presence of counsel at that time. This interview lasted approximately four hours.

27. That during this interview the Defendant also admitted to Bethany McKnight that he had sexual relations with both [R.B. and M.B.].

28. That the Defendant has previously had mental health counsel beginning approximately at age 8 ½.

29. That the Defendant has been diagnosed with Major Depression, Bi-Polar Disorder, Manic Depression and Post Traumatic Stress Disorder and as a child with Oppositional Defiant Disorder.

30. That the Defendant spent a total of 22 days on suicide watch and in isolation while in the Nash County Jail.

31. That the Defendant's mental health condition did not motivate his confession. Nor, was there any law enforcement involvement at anytime during any of the interviews with the defendant and law enforcement that would indicated that law enforcement had any motivation or induced the Defendant to admit his involvement in these crimes . . .

The Court looking at the totality of all circumstances finds that the Defendant

13

knowingly and intelligently and voluntarily at all times on July 6th, July 9th, and July 16th waived his Miranda rights and freely made the statements to the arresting officers freely understanding what his actions and conduct were at that time . . .

That the interviews and admissions of the defendant on July the 6th, 9th, 16th were all freely and voluntarily given after the defendant was properly mirandized and those statements may be used by the state in this trial.

Resp't. Ex. 1 [DE-12-2], pp. 34-37.

As noted above, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). Here, after considering all the evidence, including a video recording of Petitioner being questioned, the trial court determined that Petitioner's mental health condition did not motivate his confession. In light of this and the trial court's other findings of fact, Petitioner has not established that his will was overborne in such a way as to render his confessions the product of coercion.

For these reasons, the state court's ruling was neither contrary to nor an unreasonable application of Supreme Court precedent, and was not based upon an unreasonable determination of the facts. Accordingly, Respondent is entitled to summary judgment on this claim.

### c.  Ground Three

Petitioner argues that there was "insufficient evidence to support the charge of rape." Pet. [DE-1], p. 8. Although claims of insufficient evidence are cognizable on collateral review, a federal court's review of such a claim is "sharply limited." Wright v. West, 505 U.S. 277, 296 (1992). The standard of review for a claim of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright, 505 U.S. at 284; Jackson v. Virginia, 443 U.S. 307, 319 (1979). A court reviewing the sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of

14

all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. George, 568 F.2d 1064, 1069 (4th Cir. 1978).

The North Carolina Court of Appeals found this claim to be without merit, noting:

Defendant next argues that there was insufficient evidence of vaginal penetration to submit the charge of first-degree rape to the jury, and that it was error for the trial court to deny his motion to dismiss that charge. We disagree . . .

When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."This Court reviews the trial court's denial of a motion to dismiss de novo. State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citations omitted).

At trial, M.B. testified that she and defendant had sex, and when asked what she meant by "sex," she said, "When he puts his private parts in mine."Defendant argues that this testimony is insufficient to establish the vaginal penetration element of first-degree rape." See generally State v. Fletcher, 322 N.C. 415, 424, 368 S.E.2d 633, 638 (1988) (holding that the trial court correctly defined the vaginal intercourse element as "penetration, however slight, of the female sex organ by the male sex organ"). This argument is controlled by our Supreme Court's decision in State v. Ashford. See 301 N.C. 512, 513–14, 272 S.E.2d 126, 127 (1980) ("The State points out that Ms. Isom testified that defendant had 'intercourse' and 'sex' with her and that these terms are sufficient as shorthand statements of fact on the issue of penetration. We agree.").

This argument is without merit.

Frazier, 2012 WL 123147, at * 3-4.

Conversely, Petitioner rebuts this evidence with only a conclusory assertion that "alleged victims had falsely accused their own father of [the] same allegations in the past" Pet. [DE-1], p. 8. Thus, Petitioner has failed to establish that a rational trier of fact could not have found the essential

15

elements of the crime beyond a reasonable doubt. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle habeas petitioner to an evidentiary hearing."), overruled on other grounds by, Gray v. Netherland, 518 U.S. 152, 165-66 (1996).

For these reasons, the state court's ruling was neither contrary to nor an unreasonable application of Supreme Court precedent, and was not based upon an unreasonable determination of the facts. Accordingly, Respondent is entitled to summary judgment on this claim.

### d. Ground Four

Petitioner contends that his appellate counsel was ineffective because counsel "failed to raise many important grounds in Petitioner's direct appeal." Pet. [DE-1], p. 10. To prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Ineffective assistance of counsel claims are extremely difficult to establish in the context of a section 2254 petition. Specifically, the Supreme Court has stated that, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (quotation and citation omitted).

"Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008).

16

"[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quotation omitted). Thus, a court must "accord appellate counsel the presumption that he properly decided which issues were most likely to afford relief on appeal." Bell, 236 F.3d at 164. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (internal quotation marks omitted).

Here, as noted above, appellate counsel argued "that the trial court erred in not suppressing statements of 6, 9, and 16 July 2009" and "that there was insufficient evidence of vaginal penetration to submit the charge of first-degree rape to the jury." Frazier, 2012 WL 123147, at * 1,3. Petitioner does not identify any issue that is clearly stronger than these arguments. Indeed, two of Petitioner's four grounds for relief were raised by counsel on direct appeal. To the extent Petitioner argues that the remaining issues raised in the instant petition are clearly stronger than the issues raised on appeal, that argument is without merit for the reasons discussed herein.

Accordingly, the state court's ruling was neither contrary to nor an unreasonable application of Supreme Court precedent, and was not based upon an unreasonable determination of the facts. Therefore, Respondent is entitled to summary judgment on this claim.

## B. Certificate of Appealability

Having determined that Respondent is entitled to summary judgment, the court must now consider whether Petitioner is entitled to a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability may issue only

17

upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El, 537 U.S. at 336-38; Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the petition in light of the applicable standards, the court finds that reasonable jurists would not find the court's treatment of the petition debatable or wrong and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the foregoing reasons: 1) Respondent's motion for summary judgment [DE-11] is ALLOWED; 2) Respondent's motion for expansion of page limitation on supporting memorandum [DE-13] is ALLOWED; 3) Petitioner's motion for discovery is DENIED [DE-19]; and 4) the instant petition is DISMISSED. The court DENIES a certificate of appealability, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 17 day of August, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

18

Case 5:14-hc-02056-F  Document 24  Filed 08/17/15  Page 18 of 18